THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ASHLEY WHITE, et al.,**

    **Plaintiffs,**

    v.

**SUNNOVA ENERGY CORP., et al.,**

    **Defendants.**

**Civil No. 18-1068 (ADC)**

## OPINION AND ORDER

Before the Court is defendant Sunnova Energy Corporation's ("defendant" or "Sunnova") motion to dismiss.[1] **ECF No. 20**. Jointly opposing that motion is plaintiff Ashley White, adult daughter of co-plaintiffs Michele White and William White, along with the Conjugal Partnership between Michele and William White (collectively, "plaintiffs," and individually by their first names). **ECF No. 21**. Each side filed sur-replies upon leave of the Court. **ECF Nos. 25; 28**. For the following reasons, the Court **DENIES** defendant's motion to dismiss. **ECF No. 20**.

**I.   Background**[2]

Plaintiffs were in their home in Patillas, Puerto Rico during the early morning hours of September 20, 2017, the day Hurricane María hit the island, when a solar panel owned by

---

[1] The co-defendants named in the complaint are John Doe 1, John Doe 50, John Doe 51, and John Doe 100 that plaintiffs identify as yet-unknown liable parties and insurance companies. **ECF No. 1** at 5.
[2] The Court recites the facts in the light most favorable to plaintiffs.

defendant lifted from a neighboring roof, crashed through a window of plaintiffs' home, and sliced open Ashley's neck. **ECF Nos. 1** at 6–7; **25** at 3 n. 1. The panel severed her exterior jugular vein and several other arteries and muscles before shattering and allegedly exposing plaintiffs to hazardous chemicals. **ECF No. 1** at 7–8. Michele and William, "both combat veterans, began working frantically to try to stem" Ashley's "profus[e]" bleeding. *Id.* at 8. At some point, they were able to stabilize Ashley sufficiently to move her, with the aid of several others, to a hospital in Patillas. *Id.* There, medical personnel advised that Ashley's wounds were too severe for their facility, prompting the mayor of Patillas to mobilize "his crews" to clear the road to Guayama so an ambulance could transport Ashley to Guayama Mennonite Hospital. *Id.* Ashley underwent surgery at the hospital in Guayama and survived her injuries. *Id.*

Plaintiffs assert several claims for damages arising out of Ashley's injuries and the corresponding psychological trauma experienced by Michele and William. Plaintiffs' claims are based primarily on theories of products liability against Sunnova as owner, distributor, marketer, promoter, and maintainer of the solar panel at issue. *Id.* at 4, 6, 9. Plaintiffs allege Sunnova is responsible for the defective design, manufacture, installation, and assembly of the solar panel, mounting system, and associated components.[3] *Id.* at 9–12. Plaintiffs allege that Sunnova knew or should have known that its solar panels were not capable of surviving hurricane winds in light of damages sustained by its panels in Texas a few weeks earlier from

---

[3] The Court will refer to the solar panel, components, and mounting array at issue collectively as "the solar panel system" or "the system." The Court declines to adopt the shorthand used in the briefing, referring to it as "the Solar System." This is a misnomer of astronomical proportions.

Hurricane Harvey and the presumed weakening of its panels in Puerto Rico caused by Hurricane Irma's passage shortly before Hurricane María. *Id.* at 6–7. Plaintiffs also claim that the Sunnova failed to take steps "to recover, decontaminate or warn" them "of the existence and effects" of hazardous chemicals to which they were presumably exposed after the panel shattered in their home. *Id.* at 9.

Sunnova moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(7), based on plaintiffs' failure to join necessary and indispensable parties. **ECF No. 20**. Specifically, Sunnova asserts that the solar panel system was designed, engineered, procured, constructed, installed, and tested by Maximo Solar Industries, Inc. ("Maximo") while Maximo's schematics were approved by Engineer David Roldán ("Roldán"). However, because Maximo and Roldán are both based in Puerto Rico, their joinder would deprive the Court of subject matter jurisdiction by destroying diversity. Thus, defendant concludes, the Court must dismiss the case. *Id.* at 10–13.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a party may move for dismissal of an action for failure to join a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure. "Rule 19 addresses circumstances in which a lawsuit is proceeding without particular parties whose interests are central to the suit," providing "for the joinder of such 'necessary' parties when feasible," and "for the dismissal of suits when the court determines that the joinder of the 'necessary' parties is not feasible, but that they are,

nonetheless, so 'indispensable' that the suit must not be litigated without them." *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 15 (1st Cir. 2008) (quoting Fed. R. Civ. P. 19(a), (b)).

Under Rule 19, a joint tortfeasor is not a necessary or indispensable party, rather, it is "merely a permissive party to an action against another with like liability." Fed. R. Civ. P. 19 advisory committee notes. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam) (collecting cases). "Joinder of these tortfeasors continues to be regulated by Rule 20 . . . ." Fed. R. Civ. P. 19 advisory committee notes (explaining that Rule 19 "is not at variance with the settled authorities" holding that joint tortfeasors are not necessary parties).

## III.   Analysis

Defendant argues that Maximo and Roldán are both necessary and indispensable parties and that they do not share joint and several liability as joint tortfeasors. Defendant describes their relationship as that of third-party contractors and plaintiffs' complaint as imposing vicarious liability on Sunnova for their actions. **ECF No. 20** at 11. Defendant provided various documents substantiating Maximo and Roldán's respective roles in the design, certification, and installation of the solar panel system. **ECF Nos. 20-1** to **20-5**. *See generally Rivera-Rojas v. Loewen Grp. Int'l, Inc.*, 178 F.R.D. 356, 360–61 (D.P.R. Mar. 30, 1998) (noting that the party moving for Rule 12(b)(7) dismissal may satisfy its burden under the rule by submitting evidence with its motion, which the reviewing court may properly consider). Sunnova noted that it does not become owner of a solar panel system until after it is "installed and certified as

complete/compliant." **ECF No. 25** at 3 n.1. And, because vicarious liability is not available for third-party contractors under Puerto Rico law, Sunnova cannot be held responsible for Maximo's and Roldán's actions. *See* P.R. Laws Ann., tit. 31, § 5142. (limiting vicarious liability to specifically enumerated situations). "[A]ny allegation and claims regarding negligence in this project," Sunnova contends, "should be addressed to Maximo and Eng. David Roldán." **ECF No. 20** at 10. For support, Sunnova cites *López v. Cruz-Ruíz*, 1992 P.R. Offic. Trans. 755, 510, 131 D.P.R. 694 (P.R. 1992). **ECF No. 20** at 11.

Defendant's vicarious liability argument and reliance on *López v. Cruz-Ruíz* are misplaced. *López* indicates that, although an entity is not vicariously liable for the negligence of its independent contractors, it may nonetheless be jointly and severally liable. *López*, 131 D.P.R. at 706. "'The persons who directly or indirectly hire an independent contractor shall be held jointly [solidarily] liable for the negligent harm caused by the latter in the performance of the work if said harm is a risk foreseeable by the employer.'" *Id*. (alteration in original) (quoting *Martínez-Gómez v. Chase Manhattan Bank*, 8 P.R. Offic. Trans. 542, 547, 108 D.P.R. 515 (P.R. 1979)). Sunnova's reliance on this case simply misconstrues the complaint, which is affirmatively rooted in products liability.

And, in products liability cases, Puerto Rico adheres "to the theory of strict tort liability." *Rodríguez v. Suzuki Motor Corp.*, 570 F.3d 402, 411 (1st Cir. 2009) (citing *Aponte Rivera v. Sears Roebuck de P.R., Inc.*, 144 D.P.R. 830, 838–39 (P.R. 1998) (official translation)). In these cases, "as a matter of public policy, each and every entity involved in the chain of distribution is strictly

liable to the consumer." *Del Rosario-Ortega v. Star-Kist Caribe, Inc.*, 130 F. Supp.2d 277, 284 (D.P.R. Jan. 31, 2001) (citing *Ferrer-Delgado v. Gen. Motors Corp.,* 100 D.P.R. 246, 257–58 (P.R. 1971)). In other words, under Puerto Rico law, "all those who take part in the manufacturing and distribution chain of a product are solidarily liable, along with the manufacturer, to the injured party." *Rodríguez*, 570 F.3d at 411 (citing *Aponte-Rivera,* 144 D.P.R. at 838 n.6). This is precisely what plaintiffs' complaint seeks to do—hold Sunnova strictly liable for taking part in the "manufacturing and distribution chain" of the allegedly defective solar panel system.

"Solidary" liability, also referred to as joint and several liability, obliges each tortfeasor to pay the totality of the damages owed to the plaintiff. *See Quílez-Velar v. Ox Bodies, Inc*., 198 D.P.R. 1079, 1084 (P.R. 2017) (official translation). Although Puerto Rico contract law presumes "severalty"—in which "each several debtor separately pays" its share of the debt—the Puerto Rico Supreme Court has steadfastly "declined to extend the presumption of severalty to the field of noncontractual [tort] civil liability in order to protect the victim. Thus, in an action for noncontractual damages, any of the co-tortfeasors is liable for the totality of the damages." *Id.* at 1084–85 (alteration in original). *Cf.* P.R. Laws Ann., tit. 31, § 3101. In those cases, the plaintiff, i.e. "creditor," "may" seek damages "from any of the solidary debtors or against all of them, simultaneously." *Quílez-Velar,* 198 D.P.R. at 1085. And, because joint tortfeasors are long-considered permissive parties, defendant's argument that Maximo and Roldán are necessary and indispensable fails out of the gate. *See Temple*, 498 U.S. at 7.

Nonetheless, defendant contends that the Puerto Rico Supreme Court's decision in *Quílez-Velar v. Ox Bodies, Inc.*, 198 D.P.R. 1079 (P.R. 2017) (official translation), cited above, essentially eliminates joint and several liability in cases such as this one. **ECF No. 25** at 5–7. Defendant construes *Quílez-Velar* as concluding "that the plaintiffs did not have the right to claim the entire [damages award] from just one of the joint tortfeasors" in that strict liability products liability case. *Id.* at 7.

The *Quílez-Velar* Court addressed the effect on contribution between joint tortfeasors when one tortfeasor was protected by a statutory cap on damages. *Quílez-Velar*, 198 D.P.R. at 1082–83. The jury awarded plaintiffs $6,000,000 in damages and found defendant Ox Bodies, Inc., liable for twenty percent. *Id.* at 1081–83. The jury assigned the remaining eighty percent of the liability to the Municipality of San Juan as joint tortfeasor. *Id.* at 1082. The Municipality, however, was protected by a statutory cap on damages, limiting its exposure to $500,000. *Id.* 1081–83. The Puerto Rico Supreme Court affirmed the Federal Magistrate Judge's ruling in this certified case that, when "a solidary defendant loses its right of contribution against its co-debtor because of the latter's immunity or statutory liability limit, the defendant should be liable to the plaintiff only in proportion to its responsibility." *Id.* at 1082, 1089–90. The Puerto Rico Supreme Court explained that "a debtor may take advantage of the statutory immunity or liability limit of another co-debtor with respect to the share of the debt for which that other debtor is liable," thereby allowing Ox Bodies, to "invoke the statutory liability limit that protects a co-debtor

municipality with respect to the share assigned to that municipality." *Id*. at 1089. Thus, Ox Bodies was liable to the plaintiffs for its twenty percent delimitation. *Id*. at 1089–90.

The *Quílez-Velar* ruling does not eliminate the doctrine of joint and several liability or the availability of contribution between joint tortfeasors. Rather, it reiterates the viability of solidary liability in Puerto Rico and merely limits its application in cases involving municipal joint tortfeasors. There is no municipality involved in this case and defendant has not identified any similar statutory cap on damages that may apply.

**IV. Conclusion**

Maximo and Roldán are permissive joint tortfeasors. Sunnova's motion to dismiss is **DENIED**. **ECF No. 20**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 13th day of March, 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**