**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ASHLEY PAIGE WHITE; MICHELE WHITE; BILL WHITE; the CONJUGAL PARTNERSHIP constituted between Michele White and Bill White | CIVIL NO. : 3:18-cv-1068 (ADC) |
| *Plaintiffs* | **PRODUCT LIABILITY, TORT, NEGLIGENCE** |
| vs. | |
| SUNNOVA ENERGY CORPORTATION; "JOHN DOE 1" to "JOHN DOE 50"; "JOHN DOE 51" to "JOHN DOE 100" | **TRIAL BY JURY REQUESTED** |
| *Defendants* | |

**JOINT PROPOSED INITIAL SCHEDULING MEMORANDUM**

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs and defendant Sunnova Energy Corporation, through their respective undersigned attorneys, and respectfully submit the following Joint Initial Scheduling Memorandum:

## I.      FACTUAL AND LEGAL CONTENTIONS

### A.  Plaintiffs' Factual Contention

**Preliminary Statement**

1.      This is an action brought pursuant to 28 U.S.C. §1332, seeking damages sustained by Plaintiffs on September 20,2017, including, but not limited to, physical injuries, emotional and physiological pain and suffering, loss of consortium and punitive

1

damages, in strict product liability, design defect, manufacturing defect, negligent design, negligent manufacturing, negligence *per se*, breach of warranty and fraud, as a result of the failure, breakdown and collapse of the Sunnova Solar Panel System object of this case (hereinafter referred to as the "Solar Panel System"), which Solar Panel System was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained by defendant Sunnova Energy Corporation (hereinafter referred to as "Defendant" and "Sunnova").

2.      The Solar Panel System is the solar panel system installed at the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723.

**The Parties**

**Plaintiffs**

3.      Ashley White is of legal age and is the daughter of Michele White and William White. Ashley White is, and at all material times was, a resident of Commonwealth of Puerto Rico and citizen of the United States of America.

4.      Michele White is of legal age and is the mother of Ashley White. Michele White is, and at all material times was, a resident of Commonwealth of Puerto Rico and citizen of the United States of America.

5.      William White is of legal age and is the father of Ashley White. William White is, and at all material times was, a resident of Commonwealth of Puerto Rico and citizen of the United States of America.

6.     Michele White and William White are married to each other and have constituted between them the Conjugal Partnership that is included as plaintiff in this action.

**Defendant**

7.     Sunnova is a corporation organized under the laws of the state of Texas, with its principal place of business and "nerve center" located in the state of Texas.

8.     Sunnova researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained solar panel systems such as the Solar Panel System.

9.     Sunnova researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained the Solar Panel System.

10.     Specifically, Sunnova promoted, marketed, distributed, owned, leased, installed and maintained in the Commonwealth of Puerto Rico solar panel systems such as the Solar Panel System.

11.     Sunnova purposefully availed itself of the benefits and protections of the Commonwealth of Puerto Rico.

12.     Sunnova has had sufficient contacts with the Commonwealth of Puerto Rico that maintenance of the action in this locale is consistent with traditional notions of fair play and substantial justice.

13.     Additionally, Sunnova advertised in Puerto Rico and made material omissions and misrepresentations and breaches of warranties in Puerto Rico.

14.     Since 2013, Sunnova owned, installed and maintained solar panel systems such as the Solar Panel System in the Commonwealth of Puerto Rico ("Sunnova's System") for the purposes of selling the energy generated by the systems to the Puerto Rico Electric Power Authority.

15.     Since 2013, Sunnova specifically manufactured and produced solar panel systems for the Commonwealth of Puerto Rico.

16.     Since 2013, Sunnova visited its distributors on the island of Puerto Rico to market and promote Sunnova's System.

17.     Defendant also advertised in the Commonwealth of Puerto Rico and made material omissions and misrepresentations and breaches of warranties in the same.

18.     Since 2013, Sunnova has entered into contracts with owners of residential dwellings in the Commonwealth of Puerto Rico to install Sunnova's System.

19.     The contract format used by Sunnova for Sunnova's System is the one designated as "Solar Power Purchase Agreement" © 2008-2015 Sunnova Energy Corporation, with all rights reserved.

20.     The Solar Panel System was installed at the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723, by Sunnova itself or by an agent acting on behalf of and in representation of Sunnova.

21.     The Solar Power Purchase Agreement entered into by Sunnova and Carlos Mauras Díaz is the one identified as "Contract ID: DF001054878.

4

**Factual Background**

22.     At all times material to this action, Sunnova was the owner of the Solar Panel System.

23.     Sunnova installed, by itself or through an agent acting on its behalf, the Solar Panel System on the roof of the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723.

24.     Sunnova and Carlos Mauras Díaz entered into a Solar Power Purchase Agreement, identified as "Contract ID: DF001054878, for the sale and purchase of the energy produced by the Solar Panel System.

25.     At all times material to this action, Sunnova was responsible for providing maintenance to the Solar Panel System.

26.     At all times material to this action, Sunnova was responsible for inspecting the Solar Panel System for its proper operation and functioning.

27.     At all times material to this action, Sunnova was responsible for taking the necessary measures in relation to the construction, installation, operation, maintenance and repair of the Solar Panel System as required by the circumstances.

28.     At all times material to this action, Sunnova kept satellite surveillance of the Solar Panel System.

29.     At all times material to this action, Sunnova knew that hurricane Harvey had hit Texas and the damages caused its solar panel systems.

30.     At all times material to this action, Sunnova knew that hurricane Irma had hit Puerto Rico on September 5, 2017.

31.     At all times material to this action, Sunnova knew or should have known that hurricane María was threatening to hit Puerto Rico.

32.     At all times material to this action, Sunnova knew that the solar panel systems were never established in the Puerto Rican market to withstand hurricanes.

33.     At all times material to this action, Sunnova knew or should have known that the panels of Sunnova's Syatem contain hazardous materials that cause injuries to exposed persons and animals.

34.     At all times material to this action, Sunnova knew that hurricanes dislodged panels of Sunnova's System.

35.     At all times material to this action, Sunnova knew that dislodged panels of Sunnova's System posed serious and permanent health risks to persons and animals exposed to them.

36.     During the early hours of September 20, 2017, Ashley White was in her home when one of the panels of the Solar Panel System broke loose, flew and went through one of the home windows slicing open her neck, cutting various arteries including the exterior jugular as well as severing muscles.

37.     This injuries caused Ashley White to bleed profusely to the point of impending death.

38.     The panel that entered the window of the house shattered causing Ashley White to be exposed to the hazardous chemicals of the panel ("Hazardous Chemicals").

39.     The Hazardous Chemicals spread throughout that home and living environment of the family and their animals.

6

40.     Upon becoming aware of Ashley White's injuries and condition, Michele White and William White, who are both combat veterans, began working together frantically to try to stem the bleeding by applying pressure and grabbing towels to use as field dressing, but Ashley White kept bleeding through every item.

41.     After life sustaining measures taken by Michele White and William White, a neighbor, a local police officer and a municipal worker helped Michele White and William White in taking Ashley White to the Patillas' CDT where the medical personnel were unable to help Ashley White because of the severity of her wounds.

42.     The mayor of Patillas, with his crews, cleared the road to Guayama in order for an ambulance to take Ashley White to the Guayama Mennonite Hospital where she underwent surgery.

43.     As a direct result of the incident narrated above ("Subject Incident"), Ashley White was seriously injured and suffered multiple serious physical and mental traumas as described herein below.

44.     As a direct result of the Subject Incident, Michele White and William White have suffered severe mental trauma as described herein below.

45.     The Subject Incident and the consequent damages sustained by Plaintiffs were solely caused by the negligence and fault of Sunnova as more fully set forth herein below.

46.     On September 20, 2017, Carlos Mauras Díaz was using the Solar Panel System for its intended use as installed, provided and maintained by its owner Sunnova.

47.     Sunnova expected or should have reasonably expected that the design, manufacture, installation and maintenance of the Solar Panel System would have consequences in the Commonwealth of Puerto Rico such as the ones sustained by Plaintiffs.

48.     Sunnova knew or should have reasonably known that the Solar Panel System was defectively designed, manufactured, installed and maintained and that such defects would have consequences in the Commonwealth of Puerto Rico such as the ones sustained by Plaintiffs.

49.     Sunnova knew or should have reasonably known that the Solar Panel System was hazardous.

50.     After obtaining knowledge of the Subject Incident, Sunnova made no efforts to recover, decontaminate or warn of the existence and effects of the Hazardous Chemicals.

51.     The exposure to the Hazardous Chemicals cause harm and damages known and unknown requiring medical monitoring of the Plaintiffs.

52.     The exposure to the Hazardous Chemicals was directly caused by Sunnova"s negligence.

**Negligence**

53.     The specific allegations of negligence and/or fault against Sunnova are the following:

        a.      The totality of the Solar Panel System was defectively designed.

b.      The components of the Solar Panel System were defectively designed.

c.      The totality of the Solar Panel System was defectively manufactured.

d.      The components of the Solar Panel System were defectively manufactured.

e.      The totality of the Solar Panel System was defectively installed.

f.      The components of the Solar Panel System were defectively installed.

g.      The totality of the Solar Panel System was defectively assembled.

h.      The components of the Solar Panel System were defectively assembled.

i.      The totality of the Solar Panel System and its independent components were unreasonably dangerous and could cause an incident such as the Subject Incident.

j.      The installation and assembly of the totality of the Solar Panel System and its independent components were unreasonably dangerous and could cause an incident such as the Subject Incident.

k.      Sunnova, as owner, designer, manufacturer and entity responsible for the inspection, installation and maintenance of the Solar Panel System, knew or should have reasonably known that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and as such failed to take any and all actions that would have prevented the occurrence of the Subject Incident, including, but

9

not limited to, properly and adequately securing the Solar Panel System to sustain hurricane winds of the intensity announced and forecasted for September 20, 2017.

l.    Sunnova, as owner, designer, manufacturer and entity responsible for the inspection, installation and maintenance of the Solar Panel System, knew or should have reasonably known that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and as such failed to inform Carlos Mauras Díaz that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and failed to require him to take any and all actions that would have prevented the occurrence of the Subject Incident.

m.    The Solar Panel System was defectively designed, manufactured and installed because, for reasons including but not limited to: drill holes not adequately provided in the aluminum structural shapes; new drill holes made side by side to the existing ones; enlarged existing drill holes; improper system clips were provided and/or used; the vertical support was deficient; insufficient vertical supports; the attachment of the solar panels to the aluminum framing was deficient; the thickness of the aluminum shapes was inappropriate; it failed to have safety clips; it lacked framing bracing; and, it was otherwise defectively designed and/or manufactured and/or installed.

n.    Sunnova made no efforts to recover, decontaminate or warn Plaintiffs of the existence and effects of the Hazardous Chemicals.

o.    Sunnova knowingly exposed Plaintiffs to the Hazardous Chemicals.

p.    The Solar Panel System was defectively designed, manufactured and installed because it failed, broke down and collapsed.

q.       The Solar Panel System was defectively designed, manufactured and installed because the solar panels detached and flew away.

r.       The Solar Panel System was defectively designed, manufactured and installed in that it failed to prevent the solar panels from detaching.

s.       The Solar Panel System was defectively designed, manufactured and installed in that it failed to provide adequate means and methods to determine whether or not the solar panel would detach.

t.       The Solar Panel System was defective due to the failure to provide any written instructions, warnings, training or means or methods of proper installation.

u.       The Solar Panel System was defective in that it was hazardous.

v.       The Solar Panel System was defective in that it failed to provide sufficient warnings and instructions.

w.       Defendant failed to take any other action that would have prevented the occurrence of the Subject Incident.

x.       Defendant was negligent or at fault in other regards.

**Plaintiff's Damages**

**Ashley White's Damages**

54.       As a direct result of the Subject Incident and the negligence and fault of Sunnova, Ashley White sustained an open wound to her neck that cut various arteries including the exterior jugular and exposed several muscles as a result of which she bled profusely to the point of imminent death.

11

55.     Upon becoming aware of Ashley White's injuries and condition, her parents began working together frantically to try to stem the bleeding by applying pressure and grabbing towels to use as field dressing, but Ashley White kept bleeding through every item.

56.     After life sustaining measures taken by her parents, Ashley White was taken to the Patillas' CDT were the medical personnel were unable to help her because of the severity of her wounds.

57.     The mayor of Patillas, with his crews, cleared the road to Guayama in order for an ambulance to take Ashley White to the Guayama Menonita Hospital where she was surgically intervene.

58.     Ashley White was diagnosed, among other things, with brachial plexus injury as well as a traumatic brain injury, post concussive syndrome, memory loss, inability to focus and permanent cognitive issues.

59.     Ashley White has received physical therapy but has the left side of her body is inoperative.

60.     Ashley White remains with a scar on her neck.

61.     At the present time, Ashley White is receiving medical treatment for her conditions.

62.     As a direct result of the Subject Incident and the negligence and fault of Sunnova, Ashley White has sustained and will continue to sustain in the future severe and great physical injuries and pain, which have permanently and partially disabled her.

12

63.     As a direct result of the Subject Incident and the negligence and fault of Sunnova, Ashley White has sustained and will continue to sustain in the future severe mental, moral, psychological, spiritual and emotional distress, pain and suffering, which has permanently and partially disabled her.

64.     As a direct result of the Subject Incident and the negligence and fault of Sunnova, Ashley White has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

65.     As a direct result of the Subject Incident and the negligence and fault of Sunnova, Ashley White's ability to generate income has been greatly diminished as a result of which she has sustained and will sustain a loss of income.

66.     The damages sustained by Ashley White, as well as the Subject Incident, were solely caused by the negligence and fault of Defendant.

67.     Defendant is liable for the physical damages sustained by Ashley White which are estimated in a sum no less than FIVE MILLION DOLLARS ($5,000,000.00).

68.     Defendant is liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by Ashley White which are estimated in a sum no less than FIVE MILLION DOLLARS ($5,000,000.00).

69.     Defendant is liable for the medical expenses and expenses of other nature that Ashley White has incurred and will incur in the future which are estimated in a sum no less than TEN MILLION DOLLARS ($10,000,000.00).

70.     Defendant is liable for Ashley White's past, present and future the loss of income which is estimated in a sum no less than FIVE MILLION DOLLARS ($5,000,000.00).

### Michele White's Damages

71.     As a direct result of the Subject Incident, the negligence and fault of Sunnova and the consequent damages of Ashley White, Michele White sustained the fear of the death of her daughter Ashley White and has had to make drastic changes in her live to assist Ashley White in her medical treatment and her new way of life.

72.      As a direct result of the Subject Incident and the negligence and fault of Sunnova, Michele White has sustained and will continue to sustain severe mental, moral, psychological, spiritual and emotional distress, pain and suffering.

73.     As a direct result of the Subject Incident and the negligence and fault of Sunnova, Michele White has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

74.     The damages sustained by Michele White, as well as the Subject Incident, were solely caused by the negligence and fault of Defendant.

75.     Defendant is liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by Michele White which are estimated in a sum no less than ONE MILLION DOLLARS ($1,000,000.00).

### William White's Damages

76.     As a direct result of the Subject Incident, the negligence and fault of Sunnova and the consequent damages of Ashley White, William White sustained the

fear of the death of his daughter Ashley White and has had to make drastic changes in his live to assist Ashley White in her medical treatment and her new way of live.

77.    As a direct result of the Subject Incident and the negligence and fault of Sunnova, William White has sustained and will continue to sustain severe mental, moral, psychological, spiritual and emotional distress, pain and suffering.

78.    As a direct result of the Subject Incident and the negligence and fault of Sunnova, William White has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

79.    The damages sustained by William White, as well as the Subject Incident, were solely caused by the negligence and fault of Defendant.

80.    Defendant is liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by William White which are estimated in a sum no less than ONE MILLION DOLLARS ($1,000,000.00).

## Conjugal Partnership Damages

81.    As a direct result of the Subject Incident and the negligence and fault of Sunnova, the Conjugal Partnership has incurred and will incur in medical expenses, medical monitoring and expenses of other nature related to the damages sustained by Ashley White, Michele White and William White.

82.    As a direct result of the Subject Incident and the negligence and fault of Sunnova, the ability of Michele White and William White to generate income has been greatly diminished as a result of which the Conjugal Partnership has sustained and will sustain a loss of income.

83.     The damages sustained by the Conjugal Partnership, as well as the Subject Incident, were solely caused by the negligence and fault of Defendant.

84.     Defendant is liable for the medical expenses and expenses of other nature that the Conjugal Partnership has incurred and will incur in the future which are estimated in a sum no less than ONE MILLION DOLLARS ($1,000,000.00).

85.     Defendant is liable for the Conjugal Partnership's past, present and future the loss of income which is estimated in a sum no less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

## B.  Plaintiffs' Legal Contention

**Applicable Law**

**Manufacturing Defect Doctrine in Puerto Rico**

A product is defectively manufactured when it fails to match the average quality of like products, and the manufacturer is then liable for injuries resulting from deviations from the norm. *Montero Saldaña v. American Motors Corp.*, 107 D.P.R. 452, 509-510 (1978).

**Design Defect Doctrine in Puerto Rico**

Under Puerto Rican law governing design defect claims, the Supreme Court of Puerto Rico has generally followed the example set by California for defective product design claims, allowing a plaintiff to prevail under either of two standards: (1) the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; or, (2) the product's design is the proximate cause of the damage. These two alternative approaches to a product design case are derived from the California law as established in *Barker v. Lull Eng'r Co.*, 573 P.2d 443 (Cal. 1978), and are

referred to as the two prongs of the *Barker* test. *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

Under the second standard, as adopted in Puerto Rico, when the plaintiff proves that the product's design is the proximate cause of the damage, the burden shifts to the defendant to prove that "the benefits of the design at issue outweigh the risk of danger inherent in such a design." This rule, follows California law as established in *Barker v. Lull Eng'r Co.*, 573 P.2d 443 (Cal. 1978), which is a minority rule. See, *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 69 (1st Cir. 1991).

The rationale articulated for this burden shifting is that most of the evidentiary matters which may be relevant to the determination of the adequacy of a product's design under the "risk-benefit" standard - (feasibility, cost of alternative designs and other relevant factors under the risk standard, which standard requires the defendant to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design) - involve technical matters peculiarly within the knowledge of the manufacturer. *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 69 (1st Cir. 1991). See, also, *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 52 (1st Cir. 2007). The goal of the *Barker* rule, therefore, is to "lighten the plaintiff's burden" in proving a design defect. *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 69 (1st Cir. 1991).

To prove that the product's design is the proximate cause of the damage a plaintiff is required to present expert testimony to establish that the allegedly dangerous product was designed such that it would be dangerous. See, *Claybaugh v. Condado Plaza Hotel &*

*Casino*, 2010 U.S. Dist. LEXIS 75671, footnote 3 (DPR, 2010), referring to *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

### Failure to Warn Doctrine in Puerto Rico

In Puerto Rico, a products liability plaintiff alleging failure to warn must prove the following: (1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product "unsafe" (and not inherently dangerous as in other jurisdictions); and, (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury. *Perez-Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 53 (1st Cir. 2003). See, also, *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir. 1991), citing *Mendoza v. Cerveceria Corona, Inc.*, 97 D.P.R. 499, 97 P.R.R. 487, 495-96 (1969) (the Puerto Rico Supreme Court has rejected the "unreasonably dangerous" requirement in *Restatement (Second) of Torts* § 402A, a significant departure that further relaxes the claimant's burden).

### Negligence/Fault (Tort Action)

Under Article 1802 of Puerto Rico's Civil Code, recovery of tort damages requires a showing that the defendant "by act or omission cause[d] damage to another through fault or negligence." 31 PRLA § 5141.

The three essential elements for general tort claims are: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in

other words, proximate cause. *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

Foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause. *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

The breach of duty element has two sub-elements: duty and breach. The duty sub-element is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances. Foreseeability is a component of the breach sub-element because a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk. In other words, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to this element of a tort claim. *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

Once a plaintiff has demonstrated that the defendant was negligent (meaning that the defendant breached its duty of care), he must then demonstrate that the defendant's negligence was the proximate cause of his injuries. Foreseeability is also a component of the proximate cause analysis, which has two sub-elements: actual cause and foreseeability. A defendant's actions may only be the proximate cause of a plaintiff's injuries if they in fact caused the injuries and the defendant could have reasonably foreseen that the injuries (or related harms) would result from his actions. . *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

A plaintiff might rely on similar, or even identical, factual evidence to carry her burden on both elements, but they remain distinct legal concepts. . *Vazquez-Filippetti v. Banco Popular de P.R.,* 504 F.3d 43, 49 (1st Cir. 2007).

Article 1802 of the Civil Code, the wellspring of civil liability in Puerto Rico**,** reveals an express legislative mandate which provides: "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." 31 PRLA § 5141. See, also, *Santiago v. Becton Dickinson & Co., S.A.*, 571 F. Supp. 904, 911 (DPR, 1983).

"This concurrent imprudence should not be confused with the situation where there are various possible causes for the injury and the court must determine if one of them excludes the rest. If the plaintiffs' negligence were considered an intervening cause, as defined in *Gines Melendez v. Aqueducts Authority*, 86 P.R. 490; 493-97 (1962), then we could conclude that this was the sole cause of the injury and the initial or pre-intervening actor is exonerated, not because his part in causing the injury was minimal, but because his act (or omission) did not cause or contribute to the injury. *See also: Valle v. Amer. Inter. Ins. Co.*, 108 PRR 108, P.R. Dec. 692, 697-99 (1979); *Widow of Andino v. Water Resources Auth.*, 93 P.R. 168, 178 (1966). If, however, the party (a third party defendant) is found to have been a joint tort-feasor (with the third party plaintiff), then he (the third party defendant) is liable, even if his negligence were minimal. *See: Quinones v. Duarte Mendoza*, PRR , R-79-215, 216, decided on March 3, 1982 (82 JTS 26); *Mendez Purcell v. WRA*, 110 PRR , 110 P.R. Dec. 130 (1980); *Torres Trumbull v. Pesquera*, 97 P.R. 329, 339 (1969); *Widow of Davila v. Water Resources Auth.*, 90 P.R. 316, 322-23 (1964)." See, *Santiago v. Becton Dickinson & Co., S.A.*, 571 F. Supp. 904, 911 (DPR, 1983).

Therefore, in the event that the negligence of both (the defendant and the plaintiff) are found to have contributed to the occurrence and the consequent damages, the defendant would not be exonerated but would be entitled to a reduction of the indemnity.

## FIRST CAUSE OF ACTION

1.     Sunnova carelessly, negligently, recklessly, wantonly and willfully researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained the Solar Panel System and its components.

2.     It was the duty of the Sunnova to research, develop, design, test, manufacture, inspect, label, distribute, market, promote, own, install and maintain the Solar Panel System in such a condition that would make it reasonably safe for third persons.

3.     At all material times, Sunnova had actual and/or constructive knowledge of the nature and condition of the Solar Panel System and its components.

4.     Sunnova owed to Plaintiffs a duty of strict liability not to harm them as a result of the ownership, use, inspection, installation and maintenance of the Solar Panel System and its components.

5.     Sunnova's breached of its duty was the proximate cause and the substantial factor in causing the damages sustained by Plaintiffs.

6.     As a result, Plaintiffs are entitled to be compensated by Sunnova for their damages.

## SECOND CAUSE OF ACTION

7.      Sunnova researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained the Solar Panel System and its components.

8.      The Solar Panel System and its components were not reasonably safe and were unduly and unreasonably dangerous for its intended use when they were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained by Sunnova.

9.      At all material times, Sunnova had actual and/or constructive knowledge of the nature and condition of the Solar Panel System and its components.

10.     At the time of the Subject Incident, the Solar Panel System and its components were being used for the purpose for which they were designed and intended.

11.     At the time of the Subject Incident, Plaintiffs could not have discovered, by the exercise of reasonable care, the dangerous condition of the Solar Panel System and its components or perceived their danger and could not have avoided their injuries.

12.     The acts and omissions of Sunnova and the unreasonably dangerous condition of the Solar Panel System and its components caused the injuries sustained by Plaintiffs.

13.     As a result, Plaintiffs are entitled to be compensated by Sunnova for their damages.

**THIRD CAUSE OF ACTION**

14.     Sunnova researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained the Solar Panel System and its components.

15.     The Solar Panel System and its components were defective when they were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained by Sunnova.

16.     At all material times, Sunnova had actual and/or constructive knowledge of the nature and condition of the Solar Panel System and its components.

17.     At the time of the Subject Incident, the Solar Panel System and its components were being used for the purpose for which they were designed and intended.

18.     At the time of the Subject Incident, Plaintiffs could not have discovered, by the exercise of reasonable care, the defective condition of the Solar Panel System and its components or perceived their danger and could not have avoided their injuries.

19.     The acts and omissions of Sunnova and the defective condition of the Solar Panel System and its components caused the injuries sustained by Plaintiffs.

20.     As a result, Plaintiffs are entitled to be compensated by Sunnova for their damages.

**FOURTH CAUSE OF ACTION**

21.     Sunnova, as owner, designer, manufacturer and entity responsible for the inspection, installation and maintenance of the Solar Panel System, knew or should have

reasonably known that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and as such failed negligently failed to take any and all actions that would have prevented the occurrence of the Subject Incident, including, but not limited to, properly and adequately securing the Solar Panel System to sustain hurricane winds of the intensity announced and forecasted for September 20, 2017.

22.    Sunnova, as owner, designer, manufacturer and entity responsible for the inspection, installation and maintenance of the Solar Panel System, knew or should have reasonably known that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and as such negligently failed to inform Carlos Mauras Díaz that the Solar Panel System could not withstand the circumstances prevailing on September 20, 2017, and failed to require him to take any and all actions that would have prevented the occurrence of the Subject Incident.

23.    Sunnova, as owner, designer, manufacturer and entity responsible for the inspection, installation and maintenance of the Solar Panel System, was negligent, among other things, in that: drill holes were not adequately provided in the aluminum structural shapes; new drill holes were made side by side to the existing ones; the existing drill holes were enlarged; improper system clips were provided and/or used; the vertical short support was deficient; not sufficient vertical short supports were provided; the attachment of the solar panels to the aluminum framing was deficient; the thickness of the aluminum shapes was inappropriate; fail to have safety clips; and, lacked framing bracing.

24.     After obtaining knowledge of the Subject Incident, Sunnova made no efforts to recover, decontaminate or warn of the existence and effects of the Hazardous Chemicals.

25.     The exposure to the Hazardous Chemicals cause harm and damages known and unknown requiring medical monitoring of the Plaintiffs.

26.     The exposure to the Hazardous Chemicals was directly caused by Sunnova"s negligence.

27.     As a direct and proximate cause of Sunnova's negligent acts and omissions, Plaintiffs sustained the damages described above.

28.     As a result, Plaintiffs are entitled to be compensated by Sunnova for their damages.

### FIFTH CAUSE OF ACTION

29.     Sunnova researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, owned, installed and maintained the Solar Panel System and its components.

30.     The Solar Panel System failed to contain adequate instructions warnings when it was placed in the stream of commerce.

31.     Sunnova had a duty to warn against latent dangers in the Solar Panel System resulting from foreseeable weather conditions of which they knew or should have known.

32.     Sunnova failed to warn against said latent dangers in the Solar Panel System.

33.     Sunnova's failure to warn against such latent dangers was the proximate cause and a substantial factor in causing Plaintiffs' damages.

34.     As a result, Plaintiffs are entitled to be compensated by Sunnova their damages.

### SIXTH CAUSE OF ACTION

35.     At the time and place of researching, developing, designing, testing, manufacturing, inspecting, labeling, distributing, marketing, promoting, owning, installing and maintaining the Solar Panel System, Sunnova expressly and/or impliedly warranted that the Solar Panel System was reasonably safe and fit for its intended uses.

36.     The Solar Panel System was not fit for the purposes for which it was to be used.

37.     Sunnova breached the implied and/or express warranties, and said breach was the proximate cause and a substantial factor in causing Plaintiffs' damages.

As a result, Plaintiffs are entitled to be compensated by Sunnova for their damages.

### C. Defendant's Factual Contention

In the instant case, Plaintiffs contend that on September 20th, 2017, at the time when Hurricane María was passing through Puerto Rico, a solar panel that was installed in the roof of one of their neighbors broke loose, flew and went though on of their home windows slicing open the neck of their daughter, Ashley White. According to the Complaint, the solar panel was part of a solar panel system that they alleged was designed, manufactured, tested, installed, owned and maintained by appearing

defendant, Sunnova Energy. They essentially state, pursuant to product liability and negligence causes of action, that Sunnova Energy is responsible for the damages suffered by them after the solar panel allegedly flew into their home and physically injured co-plaintiff Ashley White.

Accordingly, the basic premise of Plaintiff's legal theory is their contention that Sunnova Energy designed, manufactured and installed a defective solar panel system in the roof of their neighbor that should have withstood Hurricane María's historical and unprecedented storm-winds. However, as evidence will show after discovery process is over, this premise is erred. Sunnova Energy did not research, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed or installed the solar panel system here in question.

It was, as a matter of fact, the independent contractor Maximo Solar who designed, manufactured and installed the solar panel system in the neighbor's house. Moreover, Maximo Solar had an independent engineer, Eng. David Roldán, P.E., certify that he had analyzed the frame structure designed by Maximo Solar and concluded that it was in compliance with the applicable construction codes and that the structure could support winds loads with basic wind speed of 145 m.p.h. and seismic loads. Said engineer also certified that the structure had been properly secured to the ceiling.

Sunnova Energy did not participate in the manufacturing and distribution chain as to the solar panel that allegedly flew from the neighbor's roof into Plaintiff's windows. Sunnova became owner of the solar panel system once it was already installed and certified by Maximo and Eng. Roldán. Appearing defendant had absolutely no control

or participation during the design, manufacturing and installation process.

Furthermore, the Puerto Rico Supreme Court has stated that the person who directly or indirectly hires an independent contractor will only be held jointly (solidarily) liable for the negligent harm caused by the latter in the performance of the work if said harm is a risk foreseeable by the employer. See *Martínez-Gomez v. Chase Manhattan*, 108 D.P.R. 515 (1979). The facts leading up to this incident, that include the island of Puerto Rico being ravaged by two category five hurricanes in a two-week span, could not have been foreseen by anybody. Moreover, this type of liability under the independent contractor doctrine ceases to exist in cases where the employer has required from the third-party contractor to take the necessary security measures in consideration of foreseeable risks. See *Pons Anca v. Engebretson*, 160 D.P.R. 347 (2003). Given that Sunnova Energy procured that its independent contractor complied with all applicable construction codes and required them to take all necessary security measures for foreseeable risks, Puerto Rico Supreme Court's case-law precludes the imposition of liability to Sunnova upon any wrongdoing by the person who actually designed, manufactured and installed the solar panel system here in question.

Notwithstanding, and only for purpose of argumentation, even if Sunnova had any kind of responsibility for its contractors actions, there is no liability in this case as the solar panel system that was in the neighbors roof-top was properly designed, manufactured and installed, and it performed as a reasonable person would expect it would during the extraordinary circumstances leading up to this accident.

In addition, it will be established by the evidence that the accident alleged in the

Complaint and the damages stated in the pleadings where not caused by virtue of a defective design, manufacturing or installation of a commercial product, but rather by an act of God or force major that could not have been anticipated. Hurricane María by all means is an intervening cause that precludes any liability that defendant could possibly have in this case.

In sum, Sunnova Energy is not liable under the product liability cause of action inasmuch as: 1) Sunnova did not design, manufacture or install the solar panel that allegedly harmed the Plaintiffs; 2) Sunnova required from the independent contractor who designed, manufactured and installed the solar panel system to take all appropriate and necessary security measures for all foreseeable risks; 3) the solar panel system here in question was not defective; 4) even a defect where to have existed in the solar panel system, Sunnova Energy did not participate in the design and distribution chain of said product; 5) Sunnova is not in the business of designing, manufacturing or installing solar panels; 6) Plaintiff's damages where not caused by a defective product, but rather by an act of God or force major that could not have been predicted; 7) Hurricane María was an intervening cause; 8) Sunnova did not owe a duty of care to the Plaintiffs in the present case.

Lastly, and as an alternative cause of action for torts under Article 1802 of the Puerto Rico Civil Code, Plaintiffs claim that Sunnova Energy acted negligently by having constructive knowledge of the fact that the solar panel system could not withstand the circumstances prevailing on September 20th, 2017 and failed to take any actions to prevent the occurrence of said incident. As to this cause of action, evidence will show

that Sunnova Energy acted at all time like a reasonably prudent person would have and did not in any way or form contribute to the occurrence of the alleged incident and did not caused Plaintiffs damages.

**D. Defendant's Legal Contention**

a. Product Liability

Plaintiffs have pleaded jurisdiction upon diversity of citizenship statute. State substantive law supplies the rules of decision for a federal court sitting in diversity jurisdiction, meaning Puerto Rico law applies here. *Salvati v. Am, Ins. Co.*, 855 F.3d 40, 44 (1st Cir. 2017) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ).

Under Puerto Rico law, to succeed on a defective design product liability claim, Plaintiffs must be able to show that: "(1) [Defendant's] equipment has a defect, in any of its modalities; (2) the defect existed when the product left [Defendant's] control; (3) [Defendant] is in the business of selling this type of product; (4) the defect was the adequate cause of [Plaintiffs' injuries]; and (5) [Plaintiff] use[d] the product in a manner that was reasonable and foreseeable by [Defendant]." *Santos-Rodriguez v. Seastar Sols.*, 858 F.3d 695, 698 (1st Cir. 2017) (citation and internal quotation omitted).

It is important to note that to succeed on a claim, Plaintiffs must be able to establish each and every element. *Hernandez Denizac v. Kia Motors*, 323 F.Supp.3d 277 (D.P.R. 2017). If they fail to show even one, they cannot succeed on the claim, even if other elements are vigorously contested. See Joseph W. Glannon, The Glannon Guide to Civil Procedure 438-39 (2003) (explaining that for a defendant to succeed on a motion for

summary judgment, there need only be one element of a claim for which there is no genuine dispute as to a material fact).

b. Independent Contractor Doctrine

In *Mariani v. Christy*, 73 D.P.R. 782 (1952), the Supreme Court of Puerto Rico recognized, as a general rule, that a principal who exerts no control over the manner in which contracted services are performed would not be liable for damages the contractor causes to third parties. Id. at 798. Ten years later, the Court addressed the issue again in *Bonet v. Municipio de Barceloneta*, 87 D.P.R. 81, 85–86 (1963), stating that liability was possible when the services contracted were inherently dangerous, but the principal had failed to take especial precautions to minimize the risks of damages to third parties. Then, in *Barrientos v. Gobierno de la Capital*, 97 D.P.R. 552, 562 (1969), the Court established that imposing liability was proper if the principal had failed to address foreseeable risks arising from contracted services, regardless of whether such services were inherently dangerous.

*Martinez v. Chase Manhattan Bank*, 8 P.R. Offic. Trans. 542, 108 D.P.R. 515 (1979) ensued next. There, the Court first reaffirmed the foreseeability standard of Barrientos and emphasized its scope:

> The person who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm to a third person, unless special precautions are taken, is answerable for the damages caused by the failure of the contractor to take said precautions, even though the employer may have provided for them in the contract or otherwise.
>
> ....

31

The contractor's employer is not held liable for the latter's ordinary negligence resulting in damages to a third person, nor for failing to follow the routine precautions which a careful contractor should ordinarily take. The employer's liability is concerned with "special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize a necessity of taking special precautions.... 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." Id.

Then, the Court also held that liability was proper when the principal derived financial benefits from the services that caused the injury. Id.

Nevertheless, in *Lopez v. Cruz*, 1992 P.R. Offic. Trans.755; 131 D.P.R. 649 (1992), a tort-suit against a municipality, the Court limited the financial benefit principle of Chase to private for-profit principals. The Court also clarified that the liability imposed on a principal was not vicarious, but rather on account of the principal's failure "to take the necessary precautions, given the particular risks of a project." Id.

*Pons Anca v. Engebretson*, 160 D.P.R. 347, followed in 2003. There, a house owner contracted the cutting of two 60–foot tall palm trees located in front of his house. Id. The contractor had over 25 years of experience cutting tall trees and owned vehicles and the necessary equipment to perform such services. Id. Moreover, before performing the services, the contractor inspected the area to determine the manner in which the palms were to be cut and the precautionary measures needed. Id.

He and two other employees cut the first palm tree; one of them did the cutting

while the other two made sure that passersby did not come near the area. Id. Once the first tree laid safely on the ground, the men decided to rest, and left standing against the remaining palm tree a forty-foot ladder being used for the job. Id. Unfortunately, while the workers were away resting, the ladder fell, injuring an eleven-year old girl who was walking by. Id.

The girl's parents filed a tort-suit on her behalf, claiming damages against both the house owner and the contractor. Id. The Court of First Instance found defendants liable, concluding that they had failed to take the necessary precautionary measures to avoid damages to passersby. Id. The Court of Appeals affirmed, and defendants appealed to the Supreme Court of Puerto Rico, where, after a detailed discussion of previous principal/contractor jurisprudence, the house owner was relieved from liability. Id. In so holding the Court stated:

> We understand that the adequate interpretation of the standard of liability for independent contractors, as enunciated in Martinez v. Chase Manhattan Bank, supra, and applied in Lopez v. Cataño Mun. Government, supra, must be that the employer must not be held liable for the negligence of the contractor when the same consists in omitting the routing measures of care to carry out the work that has been entrusted to him. Nor must liability be imposed on the employer when the independent contractor's lack of care was not foreseeable by the principal.
>
> On the other hand, when dealing with a project that by its nature implies particular risks, the employer will be liable for the contractor's negligence if he fails to demand in the contract [the] taking [of] the special safety measures that may be necessary or, if they are not included in the contract, if the employer does not exercise due diligence to take such measures himself in some form....

33

Finally, the employer must not be held liable for the independent contractor's negligence when he exercises due diligence to ensure that the person contracted has the skills and sufficient experience to carry out the work, thus, it is expected that he will take the necessary precautionary measures to avoid the risks that the work can cause. Under those circumstances, it will be understood that the employer has acted as a prudent and reasonable man in delegating the work to a person capable of carrying out the work. Id.

### c. Fortuitous Case and Force Major

Under Puerto Rico law, liability arising from Article 1802 of the Puerto Rico Civil Code is excluded when its opposed by the concepts of 'fortuitous case or force major'. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854 (1978). Under these doctrines Puerto Rico Supreme Court has specifically decided that unexpected effects from events of nature are part of the concept of force major. Id.

In *Vidal & Cía. S. en C. v. Am. R.R. Co.*, 28 D.P.R. 204, (1920), the Puerto Rico Supreme Court expressed that: "force major is an event that could not be guarded against or resisted, for example the strike of a thunderbolt, hail, floods, **hurricanes**, enemies' interruptions, burglary by thieves…". (Our translation and emphasis).

### d. Intervening cause

As was stated in *Marshall v. Perez Arzuaga*, 828 F.2d 845 (1st Cir.1987), proximate cause also is defined in terms of foreseeability. Id. at 847–48. A person is liable for injuries that a prudent person reasonably could anticipate. Id. at 847 (citing *Pacheco v. Puerto Rico Water Resources Auth*, 112 D.P.R. 296 (1982), 12 P.R.S.Ct. Official Translations at 372); *Jimenez v. Pelegrina*, 112 D.P.R. 700 (1982) 12 P.R.S.Ct. Official

Translations at 888. The rule of foreseeability does not require that the precise risk or exact result that occurred should have been foreseen; rather, the essential factor is that a person should have foreseen consequences of the general kind that occurred. *Gines v. Puerto Rico Aqueduct & Sewer Auth.*, 86 P.R.R. 490, 495 (1962). Intervening causes can break the chain of causality if they are not foreseeable. *Gines*, supra, 86 P.R.R. at 495; *Widow of Andino v. Puerto Rico Water Resources Auth.*, 93 P.R.R. 168, 178 (1966).

An "intervening cause" is defined as "a cause of injury that 'comes into active operation in producing the result after the actor's negligent act or omission has occurred.'" *Marshall*, supra, 828 F.2d at 848 (quoting Widow of *Andino*, supra, 93 P.R.R. at 178). Thus, in a negligence action, foreseeability provides the linchpin both for determining the duty of an actor and for determining his liability for the breach of that duty.

In an action based on a theory of strict liability, foreseeability is not necessary to a determination of the defendant's duty (a manufacturer's duty is not limited to acting diligently to prevent unreasonable risks; rather, a manufacturer's duty is to manufacture and put into commerce goods that are free of defects, *Montero Saldana v. American Motors Corp*, 107 D.P.R. 452 (1978), 7 P.R.S.Ct. Official Translations at 508 (citing *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962); see also Restatement (Second) Torts § 402A at 349–50 (1965)), **but it is still essential to defining the scope of a manufacturer's liability when defective goods are put into the stream of commerce**. See: *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967 (1st Cir. 1991). A manufacturer is not an insurer of all injuries stemming from the use of its products, *Mendoza v. Cerveceria Corona, Inc.*, 97 P.R.R. 487, 97 P.R.R. at 499

(1969), and is liable only for damages that are a reasonably foreseeable consequence of putting the defective goods on the market. Id.; see also *Montero Saldana*, supra, 7 P.R.S.Ct. Official Translations at 508.

### e. Article 1802

Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141, provides in its pertinent part that: A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. To establish liability for negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, that the defendant breached that duty (i.e., that the defendant was negligent), that the plaintiff suffered damages, and that those damages were caused by the breach of duty (i.e., proximate causation). Nieves-Romero v. United States, 715 F.3d 375, 378-79 (1st Cir. 2013). (citing Sociedad de Gananciales c/p Hernández-López v. González Padín Co., 17 P.R. Offic.Trans. 111, 125 (1986)). "As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007).

In most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)). "Foreseeability is a component of the breach [element] because a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Id. (internal quotation marks omitted). As such, a

plaintiff must show the foreseeable risks created by the defendant's acts or omissions to satisfy her burden as to this element. Id. Once a plaintiff has demonstrated that the defendant was negligent (breached the duty of care), she must then demonstrate that the defendant's negligence actually caused her injuries and the defendant could have reasonably foreseen that the injuries would result from his acts or omissions. Id.; Marshall v. Pérez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) (citing Jimenez v. Pelegrina, 112 P.R. Dec. 881, 885 (1982)).

"It is an established rule of tort law that for a tortfeasor to be found liable, there must be a causal relationship between the culpable act and the resulting harm. Cardenas Maxan v. Rodriguez, 125 P.R. Dec. 702 (1990). In other words, the culpable act must be the most proximate cause of the harm. Arroyo Lopez v. ELA, 126 D.P.R. 682, 126 P.R. Dec. 682 (1990); Valle v. Amer. Inter. Ins. Co., 108 P.R. Dec. 692 (1979). The term "proximate cause" refers to that which ordinarily produces the harm in question, according to general experience. Cardenas Maxan, 125 P.R. Dec. at 710; Sociedad de Gananciales v. Jeronimo Corp. Inc. Co., 103 P.R. Dec. 127, 134 (1974). To determine whether a particular occurrence was the proximate cause of the harm, one must examine whether the harm was to be expected within the ordinary course of events. Arroyo Lopez, 126 P.R. Dec. at 690." Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co., 999 F. Supp. 213, 225 (D.P.R. 1998).

## II.      JURISDICTIONAL ISSUES

### A. Plaintiffs

None.

**B. Defendant**

None at this time.

### III.    CONSENT TO TRIAL BY MAGISTRATE

The parties do not consent to trial by Magistrate.

### IV.    ELECTRONIC DISCOVERY ISSUES

At present the parties do not anticipate there will be any electronic discovery issues.  However, if any such issue was to arise, then the parties would address the matter as per the Rules of Civil Procedure, and in particular, Local Rule 26.

### V.    LIST OF POTENTIAL WITNESSES

**A. Plaintiffs**

**Fact and Expert witnesses**

1.  William White – Will testify regarding all events prior to the occurrence ("Occurrence") object of the complaint filed in this case ("Complaint'), the Occurrence, all events after the Occurrence, his damages, the damages of Ashley White, the damages to Michele White, Ashley White's condition prior to, during and after the occurrence, Ashley White's medical treatment, all the facts detailed in the Complaint and everything related to the foregoing without any limitation whatsoever.

2.   Michele White - Will testify regarding all events prior to the Occurrence, the Occurrence, all events after the Occurrence, her damages, the damages of William White, the damages of Ashley White, Ashley White's condition prior to, during and after the occurrence, Ashley White's medical treatment, all the facts detailed in the Complaint and everything related to the foregoing without any limitation whatsoever.

3.   Ashley White - Will testify regarding all events prior to the Occurrence, the Occurrence, all events after the Occurrence, her damages, the damages of William White, the damages of Michele White, her condition prior to, during and after the occurrence, her medical treatment, all the facts detailed in the Complaint and everything related to the foregoing without any limitation whatsoever.

4.   Carlos Mauras Díaz - Will testify regarding all events prior to the Occurrence, all events after the Occurrence, the installation of the Solar System installed at his home, the ownership of the Solar System, all matters pertaining to the Solar System installed at his home including but not limited to contract and warranties and everything related to the foregoing without any limitation whatsoever.

5.   Cristina Lebron – Will testify as to all matters related to the condition, capacities and capabilities of Ashley White before and after the occurrence, how the occurrence affected Ashley White and everything related to the foregoing without any limitation whatsoever.

6.   Miriam Miller – Will testify as to all matters related to the condition, capacities and capabilities of Ashley White before and after the occurrence, how the

occurrence affected Ashley White and everything related to the foregoing without any limitation whatsoever.

7.  Ralph Alvarado of Q-Cell US - Will testify as to all matters related to the requirements for the racking system of Q-Cell panels such as the one object of the present case.

8.  Linda Attaway, SVP, Operations, Sunnova Eneregy Corporation ("Sunnova") (and/or any other representative or representatives of Sunnova) – Will testify as to all matters related to the Solar System Work Order for the work performed at the home of Carlos Mauras Díaz ("Work Order"), the work performed at said home; Sunnova's rights and obligations under the Work Order, the rights and obligations of Maximo Solar Industries, Inc., ("Máximo") under the Work Order; the contract between Carlos Mauras Díaz and Sunnova ("Contract"), Sunnova's rights and obligations under the Contract, the business relationship between Sunnova and Máximo, Sunnova's advertisements on the internet; Sunnova's working relationship with its partners and contractors, the inspection and approval by Sunnova of the work performed by Máximo, characteristics of the Solar System installed at the home of Carlos Mauras Díaz, ownership and warranties of the Solar System installed at the home of Carlos Mauras Díaz, the requirements established by the manufacturer of the solar panels for the frame of the same, Sunnova's monitoring of all of its solar systems, all facts related to the allegations against Sunnova made in the Complaint and everything related to the foregoing without any limitation whatsoever.

9.   Jonattan Martir, employee of Máximo - (and/or any other representative or representatives of Máximo to be identified during discovery) – Will testify as to all matters related to the Work Order, the work performed at said home of Carlos Mauras Díaz, the manufacturing and installation of the Solar System at the home of Carlos Mauras Díaz, Sunnova's rights and obligations under the Work Order, the rights and obligations of Máximo under the Work Order; the contract between Carlos Mauras Díaz and Sunnova ("Contract"), Sunnova's rights and obligations under the Contract, the business relationship between Sunnova and Máximo, Sunnova's advertisements on the internet; Sunnova's working relationship with its partners and contractors, the inspection and approval by Sunnova of the work performed by Máximo, the relationship between Máximo, Sunnova and Eng. David Roldán, characteristics of the Solar System installed at the home of Carlos Mauras Díaz, ownership and warranties of the Solar System installed at the home of Carlos Mauras Díaz,  the requirements established by the manufacturer of the solar panels for the frame of the same, all facts related to the allegations against Sunnova made in the Complaint and everything related to the foregoing without any limitation whatsoever.

10.   Eng. David Roldán – Will testify as to all matters related to his relationship with Máximo and Sunnova, the preparation of plans for the structure of the solar systems manufactured and installed by Sunnova and Máximo ("Structure"), the ways and manner for the construction of the Structure, the components of the Structure, the requirements for the components of the Structure, the failure of Sunnova and Máximo to follow the requirements for the construction of the Structure installed at the home of Carlos Mauras

Díaz, all facts related to the allegations against Sunnova made in the Complaint and everything related to the foregoing without any limitation whatsoever.

11.   Edwin Vargas- Maximo's employee – Will testify as to everything related to System IDDF001054878 submission approval.

12.   Eliezer M. Aviles Acevedo, engineer consultant on the project - Will testify as to everything related to project.

13.   Luis G. Barretto Rosado, engineer consultant of Maximo - Will testify as to everything related to his consulting services.

14.   Maximo Torres, President of Maximo Solar – Will testify as to everything related to the contract between Maximo and Sunnova.

15.   Sunnova employee responsible for satellite images containing solar panel damage after Hurricane Irma and after Hurricane Maria - Will testify as to everything related to the satellite images containing solar panel damage after Hurricane Irma and after Hurricane Maria.

16.   Sunnova employee with the most knowledge of the design and installation of racking systems for safely affixing solar panels to a roof - Will testify as to everything related to the design and installation of racking systems for safely affixing solar panels to a roof.

17.   Sunnova employee responsible for the failure analysis for the reasons panels became detached from racking systems on the island of Puerto Rico - Will testify as to everything related to the failure analysis for the reasons panels became detached from racking systems on the island of Puerto Rico.

18.   Plaintiffs' engineer expert(s) – to be disclosed pursuant to the Discovery Timetable – Will testify as to the negligence and fault of Sunnova and Máximo, including but not limited to all aspects detailed in the Complaint and the contents of the report he will issue.

19.   Plaintiffs' weather expert(s) – to be disclosed pursuant to the Discovery Timetable – Will testify as to all matters related to hurricane Irma and hurricane María, including but not limited to their effect in Puerto Rico.

20.   Custodian of Medical Records of Centro de Servicio Primario de Salud de Patillas – Will authenticate medical record of Ashley White.

21.   Emergency Medical Technicians – Will testify regarding services provided to Ashley White.

22.   Custodian of Medical Records of Hospital Menonita - Will authenticate medical record of Ashley White.

23.   Other custodians of Medical Records - Will authenticate medical records of Ashley White.

24.   Dr. Roque Nido Lanausse - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

25.   Dr. Olga W. Bermúdez, Physical and Rehabilitation Medicine - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

26.   Dr. Ricardo Alvarado Melendez, Neurologist - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

27.   Dr. Heriberto Martínez, Ophthalmologist - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

28.   Mayra Losa Urgel, Clinical Phycologist - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

29.   Dr. Eduardo Nadal Ortiz, Physical and Rehabilitation Medicine - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

30.   Dr. Robert Santiago, Physical Therapist - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

31.   Dr. Omar Gómez - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

32.   Dra. Lisa San Miguel, neuropsychologist - Will testify regarding the damages of Ashley White, the treatment provided to her and everything related to the foregoing without any limitation whatsoever.

33.   Plaintiffs' medical expert(s) – to be disclosed pursuant to the Discovery Timetable – Will testify as to the damages of Ashley White, her medical treatment, her actual condition, prognosis and the contents of the report he will issue.

34.   Plaintiffs' rehabilitation expert(s) – to be disclosed pursuant to the Discovery Timetable – Will testify as to the damages of Ashley White, her medical treatment, her actual condition, prognosis and the contents of the report he will issue.

35.   Plaintiffs reserve the right to eliminate from this list and not use any of the witnesses identified herein before. The decision not use any of the witnesses identified herein before cannot be used to raise an inference that the testimony would had been prejudicial to Plaintiffs.

36.   Plaintiffs reserve the right to supplement the list of factual witnesses as they further investigate the matters related to this case and obtain additional information as a result of the discovery to be conducted and the investigations to be made.

37.   Plaintiffs reserve the right to announce liability and damages expert witnesses.

## B.  **Defendant**

1.   Representative from Sunnova Energy (the specific person will be determined at a later time) - will testify as to the contracts it had in Puerto Rico, its relationship with Maximo Solar as it relates to solar panels installed in Puerto Rico, its relationship with Carlos Mauras and the solar panel system that was installed in his house, as well as any other factual topic that becomes relevant as discovery process unfolds in the present case.

2.   Representative from Maximo Solar (the specific person will be determined at a later time) - will testify as to its contractual relationship with Sunnova Energy, the process of designing, manufacturing and installing the solar panel systems in Puerto Rico, as well as any other factual topic that becomes relevant as discovery process unfolds in the present case.

3.   Eng. David Roldán, P.E.- will testify as to the examination of the solar panel system that he performed, and the certification prepared regarding said inspection.

4.   Mr. Carlos Mauras- will testify as to the facts related to the solar panel system that was installed in the roof-top of his home.

5.   Erwin Vargas- representative from Maximo Solar – will testify as to all known facts, based on his personal, business or professional knowledge, relating to the solar panel system designed, manufactured and installed by Maximo.

6.   Luis G. Barreto Rosado, P.E. – Engineering consultant for Maximo Solar – will testify as to all known facts, based on his personal, business or professional knowledge, relating to the solar panel system designed, manufactured and installed by Maximo.

7.   Eliezer M. Aviles Acevero, P.E. – Engineering consultant for Maximo Solar – will testify as to all known facts, based on his personal, business or professional knowledge, relating to the solar panel system designed, manufactured and installed by Maximo.

8.      Defendant's engineer expert(s) – to be disclosed pursuant to the Discovery Timetable – will testify as to its opinions regarding negligence, products liability and all other liability causes of action pleaded in the Complaint.

9.      Defendant's weather expert(s) – to be disclosed pursuant to the Discovery Timetable – will testify as to all matters related to hurricane Irma and hurricane María, including but not limited to their effect in Puerto Rico.

10.     Defendant's medical expert(s) – to be disclosed pursuant to the Discovery Timetable – will testify as to the damages suffered by Plaintiffs.

11.     Defendants reserve the right to eliminate from this list and not use any of the witnesses identified herein before. The decision not use any of the witnesses identified herein before cannot be used to raise an inference that the testimony would had been prejudicial to Defendants.

12.     Defendants reserve the right to supplement the list of factual witnesses as they further investigate the matters related to this case and obtain additional information as a result of the discovery to be conducted and the investigations to be made.


## VI.      LIST OF PROPOSED DOCUMENTARY EVIDENCE

### A. Plaintiffs

1.      Contract between Carlos Mauras Díaz and Sunnova (to be obtain through the discovery to be conducted).

2.   Contract between Sunnova and Máximo (to be obtain through the discovery to be conducted).

3.   Documents related to Q-Cell solar panels (to be obtain through the discovery to be conducted).

4.   Documents related to the requirements for the raking system of Q-Cell solar panels (to be obtain through the discovery to be conducted).

5.   Solar System Work Order for the work performed at the home of Carlos Mauras Díaz ("Work Order").

6.   Documents related to the business relationship between Sunnova and Máximo (to be obtain through the discovery to be conducted).

7.   Documents related to Sunnova's working relationship with its partners and contractors (to be obtain through the discovery to be conducted).

8.   Documents related to the inspection and approval by Sunnova of the work performed by Máximo (to be obtain through the discovery to be conducted).

9.   Documents related to the characteristics of the Solar System installed at the home of Carlos Mauras Díaz (to be obtain through the discovery to be conducted).

10.   Documents related to the ownership and warranties of the Solar System installed at the home of Carlos Mauras Díaz (to be obtain through the discovery to be conducted).

11. Documents related to the requirements established by the manufacturer of the solar panels for the frame of the same (to be obtain through the discovery to be conducted).

12. Documents related to Sunnova's monitoring of all of its solar systems (to be obtain through the discovery to be conducted).

13. Documents prepared by Eng. David Roldán for Máximo (to be obtain through the discovery to be conducted).

14. Documents related to the plans for the structure of the solar systems manufactured and installed by Sunnova and Máximo ("Structure") (to be obtain through the discovery to be conducted).

15. Documents related to the ways and manner for the construction of the Structure (to be obtain through the discovery to be conducted).

16. Documents related to the components of the Structure (to be obtain through the discovery to be conducted).

17. Documents related to the requirements for the components of the Structure (to be obtain through the discovery to be conducted).

38. Documents related to the System IDDF001054878 submission approval.

39. Documents related to the consulting done by Luis G. Barretto Rosado, engineer consultant of Maximo (to be obtain through the discovery to be conducted).

40. Documents related to the satellite images containing solar panel damage after Hurricane Irma and after Hurricane Maria (to be obtain through the discovery to be conducted).

41. Satellite images containing solar panel damage after Hurricane Irma and after Hurricane Maria (to be obtain through the discovery to be conducted).

42.   Documents related to the failure analysis for the reasons panels became detached from racking systems on the island of Puerto Rico (to be obtain through the discovery to be conducted).

43.   Plaintiffs' engineer expert(s) report(s) (when available).

44.   Plaintiffs' weather expert(s) report(s) (when available)

45.   Medical Records of Centro de Servicio Primario de Salud de Patillas.

46.   Medical Records of Emergency Medical Technicians(to be obtain through the discovery to be conducted).

47.   Medical Records of Hospital Menonita.

48.   Medical Records of Dr. Roque Nido Lanausse>

49.   Medical Records of Dr. Olga W. Bermúdez.

50.   Medical Records of Dr. Ricardo Alvarado Melendez, Neurologist.

51.   Medical Records of Dr. Heriberto Martínez, Ophthalmologist.

52.   Medical Records of Mayra Losa Urgel, Clinical Phycologist.

53.   Medical Records of Dr. Eduardo Nadal Ortiz, Physical and Rehabilitation Medicine.

54.   Medical Records of Dr. Robert Santiago, Physical Therapist.

55.   Medical Records of Dr. Omar Gómez.

56.   Medical Records of Dra. Lisa San Miguel, neuropsychologist.

57.   Plaintiffs' medical expert(s) report(s) (when available).

58.   Plaintiffs' rehabilitation expert(s) report(s) (when available).

59.   Plaintiffs reserve the right to eliminate from this list and not use any of the documents identified herein before. The decision not use any of the documents identified herein before cannot be used to raise an inference that the testimony would had been prejudicial to Plaintiffs.

60.   Plaintiffs reserve the right to supplement the list of documents as they further investigate the matters related to this case and obtain additional information as a result of the discovery to be conducted and the investigations to be made.

**B.  Defendant**

1.      Solar System Work Order Agreement.

2.      Design Package for Solar System.

3.      Certification of the Solar System.

4.      Certification from professional engineer David Roldán, P.E.

5.      Solar Max Structure Analysis.

6.      Plaintiff's medical records.

7.      Channel Partner Agreement between Maximo Solar and Sunnova Energy.

8.      Documents related to contract between Maximo Solar and Sunnova Energy.

9.      Contract between Sunnova Energy and Carlos Mauras.

10.     Documents related to contract between Sunnova Energy and Carlos Mauras.

11.   Documents related to the design, manufacturing and installation of the solar system in Carlos Mauras' house.

12.   Documents related to Hurricane María meteorological conditions on September 20th, 2017.

13.   Photographs of the solar system after Hurricane María.

14.   Photos of Plaintiff's house.

15.   Defendant's expert report as to liability.

16.   Defendant's expert report as to damages.

17.   All other pertinent documentation that will be uncovered during the discovery process.

## VII.   PROPOSED DISCOVERY SCHEDULE

The parties submit the following discovery timetable to the consideration of the Court:

1.   Joint Initial Scheduling Memorandum with list the witnesses: **due April 5, 2019.**

2.   Initial Disclosures: due on **April 26, 2019.**

3.   Deadline to amend pleadings or add parties (file for consolidation): **May 30, 2019.**

4.   Deadline for Initial Written Discovery (Interrogatories and Requests): **June 15, 2019.**

5.   Status Conference: **first or second week of Augusts, 2019.**

6.   Deadline to complete fact witnesses' depositions: **November 29, 2019.**

7.  Deadline to produce Plaintiffs' expert reports and Curriculum Vitae: **January 15, 2020.**

8.  Deadline to produce Defendants' expert reports and Curriculum Vitae: **March 1, 2020.**

9.  Deadline for Plaintiffs' expert's supplemental/rebuttal reports: **March 30, 2020.**

10.  Deadline to complete expert witness depositions: **April 30, 2020.**

11.  All discovery is to be completed by: **May 30, 2020.**

12.  Settlement Conference: **first or second week of June 2020.**

13.  Deadline to file dispositive motions: **July 30, 2020.**

14.  Deadline to file oppositions to dispositive motions: **August 30, 2020.**

15.  Relies may be granted pursuant to Court's discretion

16.  Pretrial conference: **last week of October 2020.**

17.  Trial: **first or second week of November 2020.**


## VIII.  <u>PENDING RELATED CASES</u>

There is pending before Hon. Judge Pedro Delgado a related case filed by Plaintiffs after the filing of the present case. The related case **<u>refers to the same occurrence object of the case of captioned</u>**.

The related case pending before Hon. Judge Pedro Delgado is titled: <u>*ASHLEY WHITE; MICHELE WHITE; WILLIAM WHITE; the CONJUGAL COMMUNITY constituted between Michele White and William White v. MÁXIMO SOLAR INDUSTRIES, INC.; MÁXIMO SOLAR GROUP, CORP.; DAVID ROLDÁN; "JOHN DOE 1" to "JOHN DOE 50";*</u>

*"JOHN DOE 51" to "JOHN DOE 100*, CIVIL NO. : 3:18-cv-01913-PAD.

## IX.   <u>CONTEMPLATED RELATED LITIGATION</u>

### A.  <u>Plaintiffs</u>

Plaintiffs do not contemplate any future additional related litigation.

### B.  <u>Defendant</u>

At this time there is no contemplated future litigation.

## X.   <u>OTHER MATTERS</u>

### A.  <u>Plaintiffs</u>

Defendant has not answered the Complaint in this case. Defendant should be ordered to file its answer to the Complaint forthwith.

### B.  <u>Defendant</u>

Defendant's Answer to the Complaint is due on April 8th, 2019.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of April 2019.

| | |
|---|---|
| **JORGE CARAZO-QUETGLAS** | **ANDREU & SAGARDIA** |
| **Attorney for Plaintiffs** | **Attorney for Defendant** |
| PMB 133 | 261 Domenech Avenue |
| 53 Esmeralda Avenue – Suite 2 | San Juan, PR 00918 |
| Guaynabo, Puerto Rico  00969-4461 | Phone (787) 754-1777 |
| Tel. 787-707-0588 | Fax (787) 763-8045 |
| Fax 787-707-0595 | jlr@andreu-sagardia.com |
| E-mail: jorge@jctuayudalegal.com | |
| | |
| *S/Jorge Carazo-Quetglas* | *s/*José J. Lamas-Rivera |
| **Jorge Carazo-Quetglas** | **José J. Lamas-Rivera** |
| U.S.D.C. 201305 | USDC-PR 306210 |

**ALBERT L PARISI, ESQ.**
**Of Counsel for Plaintiffs**
16 West Main St.
Suite 104
Rochester, NY 144614
Tel. (585) 576-0440
E mail: albertlparisi@aol.com

S/ ALBERT L. PARISI
**Albert L. Parisi**
USDC-WDNY
289770710